**MEMBERS OF the JAMESTOWN SCHOOL COMMITTEE, et al.**

v.

**Dr. Thomas C. SCHMIDT, et al.**

**Civ. A. No. 77–0511.**

United States District Court,
D. Rhode Island.

Oct. 23, 1981.

---

Amato A. DeLuca, Warwick, R.I., for plaintiffs.

Richard Woolley, Dept. of Atty. Gen., Providence, R.I., for defendants.

## OPINION

PETTINE, Chief Judge.

This case presents another challenge to a Rhode Island statute providing bus transportation beyond school district limits to nonpublic school children. Rhode Island's previous statutory program in this area was invalidated in *Members of the Jamestown School Committee v. Schmidt*, 427 F.Supp. 1338 (D.R.I.1977) (hereinafter referred to as *Jamestown I*). This case raises similar legal questions.

Plaintiffs in this action are several federal, state and local taxpayers, and two organizations, the Rhode Island affiliate of the American Civil Liberties Union, Inc. and Americans United For Separation of Church and State, who are suing on their own behalf, and on behalf of their members. It is undisputed that plaintiffs have standing to challenge expenditures under this statute as violations of the Establishment Clause. This court has jurisdiction in this case under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3) for a cause of action arising under 42 U.S.C. § 1983.

This Court in *Jamestown I* held that R.I. G.L. § 16–21–2 violated the Establishment Clause of the First Amendment made appli-

cable to the states under the Fourteenth Amendment. Following that decision, the Rhode Island General Assembly enacted R.I.G.L. §§ 16–21.1–1 *et seq.*, entitled "Transportation of School Pupils Beyond City and Town Limits."[1] This statute di-

1. The statute reads in full:

## TRANSPORTATION OF SCHOOL PUPILS BEYOND CITY AND TOWN LIMITS

16–21.1–1. General purposes.—This chapter shall be construed and applied to create a state plan for the busing of pupils beyond city or town limits, in recognition of the legislative policy to encourage the establishment of and continuance of consolidated and regional schools, to provide a unified statewide busing service, to afford to pupils who attend public schools the opportunity at the election of the school committee of the city or town in which the pupils reside, to attend a public school, either full time or part time, outside of the city or town which provides a program or curriculum not available within the city or town in which the pupil resides, as authorized by § 16–3.1–1, et seq., to afford to handicapped children equal educational opportunity, to afford bus transportation to pupils who attend non-public non-profit schools which are consolidated, regionalized or otherwise established to serve residents of a specific area within the state, and who may be counted for purposes [of] reimbursement to cities and towns under the state aid formula provided by § 16–7–22, et seq., to conserve valuable natural resources by reducing the number of vehicles necessary to transport pupils to school, and, to provide for the transportation of public school students who attend schools located outside of the city or town in which they reside, to protect the health, safety and welfare of pupils who live at such distances from the schools which they attend as to make it impractical or hazardous to require the pupil to walk to school.

16–21.1–2. School bus districts established.—There are hereby established school bus districts within the state to provide bus transportation in the interest of public safety, health and welfare for pupils in grades kindergarten through grade twelve (12), or in special education programs, who attend public schools, including vocational schools and special education programs provided in accord with regulations of the Rhode Island state board of regents for education, consolidated schools established under the provisions of [§ 16–10–1], regional schools established under the provisions of § 16–10–1, et seq., or who participate in cooperative programs as provided by § 16–3.1–1, et seq., and non-public non-profit schools which are consolidated, regionalized or otherwise established to serve residents of a specific area within the state which schools satisfy the requirements of law for any of the grades of school, kindergarten through grade twelve (12) as follows:

Region I The towns of Burrillville, North Smithfield, and Cumberland, and the city of Woonsocket

Region II The county of Kent, except the town of West Greenwich and the towns of Foster, Glocester and Scituate

Region III The towns of Lincoln, Smithfield, Johnston, North Providence, Barrington, Warren and Bristol and the cities of Cranston, Central Falls, East Providence, Pawtucket and Providence

Region IV The county of Washington and the towns of Jamestown and West Greenwich

Region V The towns of Little Compton, Middletown, Portsmouth and Tiverton and the city of Newport

A pupil attending a school, including a public school, vocational school, special education program provided in accord with regulations of the Rhode Island state board of regents for education, a consolidated school established under the provisions of § 16–10–1, et seq., a regional school established under the provisions of § 16–3–1, et seq., as authorized by § 16–3.1–1, et seq., or a non-public non-profit school kindergarten through grade twelve (12), consolidated, regionalized or otherwise established to serve residents of a specific area within the state for any of the grades of schools, kindergarten through grade twelve (12), in the interest of public safety, health and welfare, shall be provided with bus transportation to the school or facility which the pupil attends, within the region in which the pupil resides, by the school committee of the city or town within which the pupil resides.

16–21.1–3. Variances permitted.—Variances to require a city or town to provide bus transportation to a pupil who attends a school, except a special education facility, outside the region in which the pupil resides shall be granted by the commissioner of education if he finds that there is no similar school within the region, that such transportation is necessary to provide an educational opportunity which the pupil has a right to pursue, and that the school building which the pupil attends is within fifteen (15) miles of the city or town of which the pupil is a resident.

Variances to require a city or town to provide bus transportation to a pupil entitled to enrollment [in] a special education program, provided in accord with regulations of the Rhode Island state board of regents for education, shall be granted by the commissioner of education if he finds that such transportation is necessary in order that the pupil enroll in a special education facility located outside of the region and there is no similar facility within the region.

vides the state into five transportation regions, and requires local school committees to provide free bus transportation to and from school within such regions for any pupil who attends:

a school, including a public school, vocational school, special education program provided in accord with regulations of the Rhode Island state board of regents for education, a consolidated school established under the provisions of § 16–10–1, et seq., a regional school established under the provisions of § 16–3–1, et seq., as authorized by § 16–3.1–1, et seq., or a non-public non-profit school kindergarten through grade twelve (12), consolidated, regionalized or otherwise established to serve residents of a specific area within the state for any of the grades of schools, kindergarten through grade twelve (12). . . .

R.I.G.L. § 16–21.1–2.

A student who desires transportation to a school located outside of the transportation region in which he resides may seek a variance allowing such transportation from the Commissioner of Education. The Commissioner is empowered to grant such a variance whenever he determines that "there is no similar school within the region, that such transportation is necessary to provide an education opportunity which the pupil has a right to pursue, and that the school building which the pupil attends is within fifteen (15) miles of the city or town of which the pupil is a resident." R.I.G.L. § 16–21.1–3.

The Complaint in this action, filed August 12, 1977, alleged that R.I.G.L. §§ 16–21.1–1 et seq. violates the Establishment Clause of the First Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Plaintiffs also alleged that the statute in question violated several distinct provisions of the Rhode Island Constitution. After a hearing held on September 7, 8, and October 19, 1977, the court abstained pending resolution of plaintiffs' state law claims which were certified to the Rhode Island Supreme Court. That Court held that plaintiffs' state law claims were not meritorious, but declined to construe the act in light of federal constitutional requirements. *Members of Jamestown School Committee v. Schmidt,* R.I., 405 A.2d 16 (1979). Thereafter further discovery ensued, and all parties eventually agreed to submit the case to the court on a record consisting of the proceedings of the initial hearing, a survey of bus transportation costs for students undertaken by the Rhode Island Department of Education in 1980, and additional testimony taken through depositions and exhibits.[2]

After a careful consideration of this record, I have concluded that the present statute is essentially indistinguishable from its predecessor which was found unconstitutional in *Jamestown I.* I, therefore, hold

16–21.1–4. Duties of school committees.—It shall be the duty of the respective school committees of the city or town to provide the bus transportation required by this act, either by the use of its own bus facilities and personnel or by contract. School committees may enter into such contracts as they shall deem necessary in order to accomplish the requirements of this act, and may enter into cooperative agreements with other school committees for the purposes of conforming to the requirements of this act.

16–21.1–5. Hearings—Commissioner of education.—All controversies arising out of application of any provision of this chapter shall be determined by the commissioner of education or his designated hearing officer who shall afford a hearing to the pupil and school committee concerned, and, after hearing, shall render a decision. The decision of the commissioner of education, or the grant or denial of a variance shall be final except that the pupil or school committee aggrieved by the decision or grant or denial of a variance, shall have a right of appeal to the superior court which shall affirm the decision or grant or denial of a variance unless it is clearly erroneous or contrary to law.

16–21.1–6. Repealer.—All acts or parts of acts and all regulations relating to or providing for transportation of pupils without the city or town limits, except as provided herein, are hereby repealed and are null and void.

2. Defendants have moved to strike certain exhibits that plaintiffs attached to their Second Supplementary Post-Trial Memorandum. Because I have found for plaintiffs without considering these exhibits, I find it unnecessary to rule on this matter.

that R.I.G.L. §§ 16–21.1–1 *et seq.* conflicts with the Establishment Clause of the First Amendment, made applicable to the states by the Fourteenth Amendment, and must be invalidated.

■ In analyzing the challenged statute in *Jamestown I*, this court employed the three-prong test that has become customary in Establishment Clause cases. To pass muster under the Establishment Clause a statute must have a secular legislative purpose, its principal or primary effect must be one that neither advances nor inhibits religion, and it must not foster an excessive government entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). The court in *Jamestown I* found that the statute in question there satisfied the first part of this test, inasmuch as it had the secular purpose of providing for the safe transportation of all children to school. *Id.* at 1347.

The statute in question here recites a number of secular purposes as its object. In particular, the Act states that one of its purposes is "to protect the health, safety and welfare of pupils who live at such distances from the schools which they attend as to make it impractical or hazardous to require the pupil to walk to school." R.I. G.L. § 16–21.1–1. The evidence adduced at the hearing held on this matter and in deposition testimony made a part of the record confirms that transportation of children to school by bus is the safest means of transport available. While plaintiffs allege that the unstated purpose of this legislation was to supply financial support to non-public sectarian schools, there is no support in the record for such an assertion. I therefore conclude, as I did in *Jamestown I*, that the statute here has a neutral, secular purpose.

*Jamestown I* concluded that the transportation scheme challenged there had the im-

permissible primary effect of advancing religion. The court reached this conclusion based on the United States Supreme Court's reasoning in *Everson v. Board of Education*, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947). There the Court held that the provision of transportation to both public and private school children *on an equal basis* was constitutionally permissible, although it represented perhaps the farthest acceptable reach of state aid in this sensitive area. *Id.* at 16–17, 67 S.Ct. at 511–512; *see Committee for Public Education and Religious Liberty v. Nyquist*, 413 U.S. 756, 775, 93 S.Ct. 2955, 2966, 37 L.Ed.2d 948 (1973); *Lemon v. Kurtzman*, 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971).

In *Jamestown I* this court found that the Rhode Island transportation program violated *Everson's* requirement that benefits be provided to all school children equally because school committees were required to provide private sectarian school children with options not available to public school children. *Id.* at 1347. The statutory scheme under consideration here is similarly defective. R.I.G.L. §§ 16–21.1–1 *et seq.* when analyzed does not provide equal opportunities for public and nonpublic school children to use transportation beyond school district limits. R.I.G.L. § 16–21.1–1 provides such transportation for public school children in the standard curriculum only if the school committee so elects and if the "program or curriculum is not available within a city or town." The scope of this very subjective limitation lies within the sole discretion of the local committee.[3] On the other hand, the city or town is required to bus private school children to consolidated, regionalized or schools otherwise established to serve residents of a specific area within the state, whether or not the program or curriculum is available within a

3. In practice, the parties agreed that public school children in the standard curriculum are usually bussed beyond school district limits only in communities which do not operate their own schools. The statute also provides for transportation beyond school district limits for

public school children enrolled in regional vocational schools or special education programs. This option remains unavailable, however, for the vast majority of public school students in the standard curriculum.

city or town and without any election by the local school committee to do so. In other words, nonpublic school students [4] can take advantage of the inter-district transportation provided by the Act whenever they choose to attend a regional or consolidated nonpublic school located in their transportation region. If they select a nonpublic school located outside of the transportation region in which they reside, they may secure transportation by obtaining a variance, provided that there is no similar school located within the transportation region and the school is within 15 miles of the city or town of which the pupil is a resident.

Nor does the requirement that the nonpublic school must be consolidated or regional in order to be covered by the Act constitute a substantial limitation on the options of nonpublic school students. A nonpublic school may become consolidated or regionalized merely by formal action taken by the school's governing body. It is apparent from all this that nonpublic school students enjoy transportation options under the challenged statute that are not available to public school students. The statute thus lacks the benevolent neutrality required of state action in this sensitive area, and has the constitutionally impermissible effect of advancing religion. *Jamestown I* at 1347.

In *Jamestown I* the greater options enjoyed by nonpublic school students were particularly troublesome because they were provided at substantially greater cost to local taxpayers.[5] *Id.* at 1347. The defendants in this case argue that additional cost data obtained subsequent to *Jamestown I* suggest that there is no substantial disparity between the cost of bussing nonpublic school students beyond school district limits and bussing public school children within school districts. They have submitted the

results of a 1979–80 Department of Education survey in which all school districts were requested to supply data on the cost and number of students bussed in 1978–79. The survey indicates that for the year in question it cost $108 per student/per year to transport 1,154 school children to religiously affiliated schools located beyond school district limits, while it cost $100 per student/per year to transport 85,405 public school students to local public schools.

The court, however, cannot accord these figures great weight because of problems associated with the survey. First, I note that the data collected by the survey are incomplete inasmuch as 23 school districts, for reasons not explained in the record, failed to submit figures for nonpublic school children bussed outside of the school district. Second, and of greater importance, the survey provides no information as to how the reported costs were calculated. It is therefore difficult to assess how accurate the survey is in determining the actual costs for the transportation of students.

I note that the parties had the opportunity to explore in detail the costs of transportation for particular school districts through the taking of depositions. This testimony reveals that in some instances it is substantially more expensive to transport nonpublic school students outside of the school district than it is to provide transport to public school students within the school district. In Warwick, for instance, it costs the local school committee $84.27 per student/per year for the bussing of public school students within the local school district, while transportation of students to Our Lady of Mercy and Solomon Schecter Schools, both sectarian schools located outside of the school district, costs $121.83 per student/per year and $1,436.28 per student/per year respectively.

4. Approximately 85% of the students who attend nonpublic schools in Rhode Island are enrolled in sectarian schools which provide at least some religious education. In 1978–79, 94% of the nonpublic school students bussed outside of their school districts attended religiously affiliated schools.

5. In *Jamestown I* the court observed that the relative cost of the benefits provided to public and sectarian school children was a relevant, but not dispositive consideration. The court assumed that "the Establishment Clause can countenance differing costs of transportation provided within a school district." *Id.* at 1348 n. 11. I continue to adhere to that view today.

On balance, it is clear that it is more expensive to bus nonpublic school students to religious schools outside the school district than it is to bus public school students to their local schools. How much more expensive it is, is uncertain, but it is also unimportant. Given the fact that sectarian school children enjoy greater options at greater public expense than their public school counterparts, the statute is constitutionally infirm.

It is worth observing that R.I.G.L. §§ 16–21.1–1 *et seq.* has been enacted at a time when public expenditure for education of the young faces more serious limitations than perhaps at any other time in recent history. Evidence adduced at the hearing and depositions taken in this matter indicates that school budgets have been pared to the limit. At the same time, local school committees are being required to fund expensive transportation options for children who have chosen to attend a regionalized sectarian school.

The benefits that such religious schools derive from this program are obvious. The free transportation permits the religious schools to attract students from towns and cities located at greater distances from the school at no cost to the institution for transportation. This in turn facilitates the process of regionalization which results in greater revenues and reduced operating expenses for the church.[6] In short, R.I.G.L. §§ 16–21.1–1 *et seq.*, like its predecessor in *Jamestown I*, "has the effect *in fact* of transferring a major cost of regionalization from parents seeking to provide their children a religious education, and the religious bodies themselves, to the taxpayers of the state. This the legislature may not do." *Jamestown I* at 1348.

In *Jamestown I* the statute under consideration was also found to create an excessive entanglement of church and state in two ways. First, it necessitated a substantial increase in administrative contracts between public school and sectarian school

officials in order to coordinate the details of the transportation program. Second, and of greater importance, the successive and very likely permanent annual appropriations required by the program created an unacceptable risk of "political fragmentation and division along religious lines, one of the principal evils against which the Establishment Clause was intended to protect." *Id.* at 1349, quoting *Meek v. Pittenger*, 421 U.S. 349, 372, 95 S.Ct. 1753, 1767, 44 L.Ed.2d 217 (1975).

I find that this statute is similarly flawed. There is evidence that the transportation program created by this statute requires significant administrative interaction between public school and sectarian school officials in order to provide for proper scheduling and routing of busses, necessary adjustments for holidays or special events, and so forth. Public school officials must also contact sectarian school personnel in order to deal with discipline problems that occur on the school busses.

The state also interacts with the church in two other ways under this statute. First, the Commissioner of Education must determine from time to time if a particular sectarian school is "consolidated, regionalized or otherwise established to serve residents of a specific area within the state" so as to come within the coverage of the Act. *See* R.I.G.L. § 16–21.1–2. Second, in deciding whether or not to grant a variance, the Commissioner may be called upon to evaluate whether a sectarian school located outside the transportation region is similar to another sectarian school located within the region. *See* R.I.G.L. § 16–21.1–3. Such governmental evaluation of religious practices and institutions is precisely the sort of church-state entanglement which the Establishment Clause prohibits. *See Walz v. Tax Commission*, 397 U.S. 664, 674, 90 S.Ct. 1409, 1414, 25 L.Ed.2d 697 (1970); L. Tribe, *American Constitutional Law* 869 (1978).

This statute also creates a serious danger of causing political division along religious

---

**6.** Evidence produced at the hearing held in this matter indicates that one of the primary reasons for the regionalization of sectarian schools has been the need to reduce operating expenses.

lines. The funding of inter-district transportation to sectarian schools remains as much of a political issue in Jamestown as it was at the time of *Jamestown I.* Disturbing incidents have also occurred in South Kingstown and Newport. Approximately a year ago, South Kingstown school officials proposed eliminating several busses that were transporting school children to Monsignor Clarke, a sectarian school. The school officials sought instead to transport these children to Monsignor Clarke using busses that also were carrying older public school students. A delegation consisting of 75 angry parents, as well as the principal and some teachers from Monsignor Clarke, appeared at a school committee meeting and protested vehemently that their group was not receiving their fair share of benefits due them as taxpayers. The school committee eventually retracted its proposal, and decided to adjust public school schedules in order to accommodate the needs of Monsignor Clarke. It should be noted that this incident involved a dispute over transportation of nonpublic school students within a school district. But the potential for political divisiveness is equally present with the inter-district bussing of nonpublic school students which involves even greater expense to the school district.

In Newport the school committee entertained a proposal to eliminate bus transportation for grades 7 through 12 for all public, private and parochial schools. A large group of parents of parochial school children, including the Chairman of the School Board for the Newport County Regional Catholic School, appeared at a school committee to protest this measure, which was subsequently defeated. It is worth noting that shortly thereafter several parents of public school children protested to the school committee that their children were not receiving bus transportation under a new school committee policy, while such

transportation was being provided to children in private and parochial schools.

All of this indicates that the potential for political fragmentation along religious lines inherent in this statute has to some extent already been realized. The United States Supreme Court has observed that "... while the prospect of such divisiveness may not alone warrant the invalidation of state laws that otherwise survive the careful scrutiny required by the decisions of this Court, it is certainly a 'warning signal' not to be ignored." *Committee for Public Education and Religious Liberty v. Nyquist,* 413 U.S. 756, 797–98, 93 S.Ct. 2955, 2977–2978, 37 L.Ed.2d 948 (1973). That warning signal cannot be ignored in this case.

The entanglement factor also serves to distinguish this case from *Springfield School District v. Department of Education,* 483 Pa. 539, 397 A.2d 1154 (1979), *appeal dismissed for want of substantial federal question,* 443 U.S. 901, 99 S.Ct. 3091, 61 L.Ed.2d 869 (1979) and *Cromwell Property Owners Association, Inc. v. Toffolon,* 495 F.Supp. 915 (D.Conn.1979), two cases decided after *Jamestown I.* While both cases upheld statutes that provided transportation to nonpublic school students beyond school district limits, the cases are factually distinguishable from the case at bar because there was no evidence of political division along religious lines in either case. *See Springfield School District,* 397 A.2d at 1166–67 n. 15; *Toffolon,* 495 F.Supp. at 925. In this case, that important warning signal is all too present.[7]

## II

Plaintiffs are entitled to a declaratory judgment that R.I.G.L. §§ 16–21.1–1 *et seq.* as applied to the transportation of nonpublic school students is unconstitutional.[8] 28 U.S.C. §§ 2201 and 2202. The court

---

**7.** Because I find the statutory scheme to be violative of the Establishment Clause, I need not reach plaintiffs' other constitutional claims.

**8.** The court finds that the statute's provisions with respect to the transportation of nonpublic school children are severable from the remain-

der of the statute. Whether constitutionally acceptable provisions of a statute are severable from provisions found constitutionally infirm depends on legislative intent. "Unless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the

is also of the opinion that plaintiffs are entitled to injunctive relief. Unlike the case in *Jamestown I,* where the court declined to issue an injunction because none of plaintiffs' tax contributions were being used to fund the unconstitutional transportation of nonpublic school students beyond school district limits, some of the plaintiffs in the case at bar are taxpayers of North Kingstown, North Providence, and Pawtucket, all of which bus nonpublic school children outside of their respective school districts. These plaintiffs thus face the prospect of irreparable harm and are entitled to an injunction. Because a new school year has recently commenced, it is necessary to enjoin the unconstitutional transportation found here as rapidly as possible without causing undue disruption in the state's transportation system or unnecessary hardship to nonpublic school students. Consistent with these concerns, counsel for both parties are requested to confer and to submit within 30 days a draft order enjoining defendants from using or authorizing the use of public funds for the transportation of nonpublic school students beyond school district limits.

---

invalid part may be dropped if what is left is fully operative as a law." *Champlin Refining Co. v. Corporation Commission of the State of Oklahoma,* 286 U.S. 210, 234, 52 S.Ct. 559, 564–565, 76 L.Ed. 1062 (1932). The absence of a severability clause is in no way dispositive. *United States v. Jackson,* 390 U.S. 570, 585 n. 27, 88 S.Ct. 1209, 1218 n. 27, 20 L.Ed.2d 138 (1968). Prior to the enactment of R.I.G.L. §§ 16–21.1–1 *et seq.,* separate statutes provided for the transportation beyond school district limits of public school students in regional vocational schools and special education programs. *See Jamestown I* at 1343. I conclude from this that the Rhode Island General Assembly would have enacted the provisions of R.I. G.L. § 16–21.1–1 pertaining to the transportation of public school students independently of the provisions with respect to nonpublic school students. The two parts of the statute are therefore severable. This opinion does not affect the transportation of public school children in nonsectarian Regional Vocational Schools and special education programs.